Good morning, your honors. I'm David Cohen, and I am the attorney for the appellate in this case, Dr. Turner. I want to start off with what I think the correct instruction under the law should have been, that Dr. Turner, this is talking about the second element as to intimidation, that Dr. Turner engaged in conduct which he knew or should have known would place a reasonable flight attendant or crew person in fear. We argue fear of bodily harm, but the cases make clear that at the very least it's put in place in fear. Counsel, there was testimony in the record that your client threatened to break the necks of at least two of the other passengers on the plane, the husband and then the woman who was seated in front of him. Isn't that sufficient as a matter of law to support the evidence that he was threatened or that a reasonable person would be put in fear of bodily injury? So the question is, is it sufficient to go to the jury, first of all? Secondly, the conduct that Your Honor is talking about did not occur in front of any of the crew people. It was later reported to them. It was reported to the flight attendant, was it not? Yes, it was reported to them. And isn't the law that the interference can be directed not just to the flight crew but also to the safety of other people on the airplane so that the attendant, the flight cabin whose safety she's responsible for? So I agree that the law is that it can be directed at a group, talking about the Meeker case. Right. However, looking at the Meeker case and the many cases cited on the statute, it's our view that every single case, every single one of them, involved conduct that was directed the flight crew in their presence or a group of individuals that included the presence of that flight attendant. It was not conduct which occurred outside the presence of the flight attendant. Would it include a crew member's fear that an altercation might break out among passengers that might then suck in a crew member? So it would not include, so again, the question is, should it have gone to the jury, but the jury would be able to... You're not disputing that it should have gone to the jury, are you? No, no, no. I'm talking about the jury instruction. Okay. So I'm not arguing that this evidence about what was reported to the flight attendant should not have come in. Sure. The question is, given the fact that this other evidence did come in about the occurrences outside the presence of the flight attendant, the question is, did the jury have the correct instruction in front of it to evaluate? So what's the problem with the instruction? So the instruction that I just read, the instruction I think is the correct instruction. I think I got to the end of it before the questions. There's two major problems with the instruction, and we're talking again about element number two, which is the intimidation element. Element number two, the intimidation element, in the disjunctive, permitted intimidation to include words. The first one is apprehension of bodily harm. That's fine. Words or actions that make the flight attendant fearful. We argue that it should be fearful of bodily harm, but we acknowledge that Hicks and Nagani do say fearful. But then in the disjunctive, or make that flight attendant refrain from doing something the flight attendant would otherwise do, that is not an intimidation requirement, and it's in the disjunctive. Well, but it has to do with interference, does it not? In other words, if the flight attendant is concerned about the conduct of this particular passenger, posing a risk that an altercation could break out between Turner and other people in the cabin, why wouldn't it be reasonable for the attendant to fear that type of an to focusing on Turner to the exclusion of carrying out her other duties in the cabin? Right. And I agree with you, Your Honor. So that's where the third element comes in. The third element is that the intimidation caused or resulted in interference with the flight attendant's duties. We're not complaining about the third element. What we're saying is that this part of the second element that was in the disjunctive, that it could affect her, that it affected her duties, it required no actual apprehension or fear. That disjunct, that disjunct clause. Well, the apprehension or fear, as I understand the record, is for what might occur to other people in the cabin, and therefore she was forced to direct quite a bit of time to trying to calm down Dr. Turner and prevent a fight from breaking out. I agree with all that. Okay. What we're talking about is simply, under the Aguilar case, if there's a part of the instruction in the disjunctive that's wrong, now this part which talks about words or actions making the flight attendant refrain from doing something that the flight attendant would otherwise do or do something that the flight attendant would otherwise not do or interfere with or lessen the flight attendant's ability to do something, that's all the third element. That's not the second element. You're not challenging that aspect of the instruction. That's the part I am challenging. You are challenging. I'm saying that that's all fine for the third element, but for the intimidation element, it's not because it doesn't require. Your problem is that those two parts were connected with an or, and probably should have been connected with something like so as to or as a result. Sure. And the part which is so as to or as a result is the third element. The third element is as a result of the intimidation. So the real problem is that it was put in the disjunctive instead of having that connect to the set, and as a result, we interfered with or lessened the flight attendant's ability to do something, which meant that she didn't do something she should have done or did something she wouldn't have done. Yes, that's the biggest problem, and the other problem is that piece of it. Why is that not harmless error? Because it is a part of the statute, and so you've got the statute. This is an artfully drawn jury instruction, but those elements are all part of the, are all part in some way of the statute. Sure, but when a statute has several elements to it, the cases make it clear that the elements must be set forth accurately. Sure. If, I'm sorry, I didn't mean to interrupt, but I'm just saying if there's conflicting evidence, and the critical point here, and direct response, why is it harmless, is that the jury acquitted Dr. Turner on the two major incidents, which were the kicking of the seat in front of him and the spitting. He was acquitted of that, even though the flight attendant testified that she saw the spitting. She actually saw it, and the jury acquitted him. They acquitted him on the assault, on the two assaults. On the two assaults, so in response to that, the reason it's not harmless is because the jury could have easily concluded here that, well, it doesn't matter whether he actually assaulted them, as long as he did something which interfered with the flight attendant's duties, he has to be convicted. The problem is that the cases say that it's not only that he did something which interfered with it, it was that he knowingly did something which put the flight attendant in fear, and these other two clauses don't require it. There's a number of- Counsel, you proposed, I'm looking at your proposed special jury, I'm sorry, just- Go ahead, Dick. You're right where I was going. All this sounds very good, except I read the instructions you proposed, it didn't have this stuff in it, and cited authorities, you now cite to say that it was a bad jury instruction. I'm wondering why it wasn't waived. I mean, I was a trial judge. I get these instructions, and I have to put them together. You proposed this instruction, jointly proposed it, you came to the judge, said this is the one you ought to give, you cite the cases, you now say the instruction isn't any good. That seems to me to be a waiver. Okay, so first of all, I was not trial counsel. Well, it doesn't matter, you're here representing trial counsel, so speak up. But secondly, we cited the case of al-Farahim in our papers, which is a case in which the ineffective assistance of counsel was alleged by the appellate counsel as a trial counsel. It was a case where trial counsel, in light of clear law... Counsel, that's not the question the judge is asking you. I appreciate you want to answer a different question. No, no, I'm answering, actually, I believe I'm answering... Did you ever object to these instructions? So one part of the instruction was... Did you ever object? No. The trial counsel did not object. He objected to the failure of the judge to place knowingly in the instructions, which is another part of the instruction. Which is another issue. Another issue. Nothing to do with this. The trial counsel did not object in light of clear law. Did you argue that you didn't have adequate time to prepare these instructions? He said none of that. So therefore, it's waived. It's not waived if it's plain error. It's not waived, as al-Farahim says... So then I'm on plain error? Is it waived or is it in fine error? I'm sorry. I wanted to actually reserve some time for rebuttal, but I absolutely argued in the brief that it's plain error, and I cited to the al-Farahim case and other cases indicating that when there's clear law, when there's clear law and the trial attorney proposes the wrong instruction, it is plain error if it goes to the elements. Well, I guess my question about this is, if you did not do anything to object, in fact proposing the instruction, and then you come in front of us and the instruction gives all of the elements that are in the statute, which it absolutely does, then how can it be plain error? So the instruction is wrong under clear law. Al-Farahim says that in a case where an attorney actually proposed or agreed with an incorrect instruction, it was IAC and or plain error. Has my court ever given any specific case or ruling that what ought to be in this jury instruction? So, yes, I believe the Meeker case and the... The Meeker case doesn't say this instruction. Well, there's no pattern I assert in instruction. I understand that. So that's why I would ask you for the case law, and I don't find any case law. So again, I'm back to plain error. How can it be plain error? It's plain error because the cases clearly say that the intimidation element is the element that prevents any type of vagueness challenge, both on its face or as applied, any type of over-breath challenge. The intimidation element has to be clear, and it's totally distinct from the injury or, I'm sorry, from the interference element. Mr. Cohen, I have a more fundamental question. Why shouldn't we invoke the invited error doctrine here, since the language that you're complaining about was included in the proposed jury instruction that the defense counsel stipulated to have tried? There's two answers. One is al-Farrahim had faced a very similar situation and actually reversed and said trial counsel was wrong in agreeing to it, not only didn't object, but actually proposed or agreed to the wrong instruction in a case of clear law, number one. And number two, the invited error doctrine involves a waiver, an open waiver by a defendant. But counsel, as I understand it, the proposed jury instructions include the result of legal research, and we require, in most district courts, a set of the instructions with citations to the cases that support the language, which apparently was done here, because I'm looking at citations at the bottom of the page. So how much more do we need to find in terms of the lawyer knowing what he was doing when he proposes the instruction with citations to law? This record shows ineffective assistance of counsel on its face. The cases clearly show that intimidation is required in the second element, and that the two destructive clauses I'm talking about should not be there. Your answer is yes on its face. It looks like it might have been invited error, but the excuse is ineffective assistance of counsel. Well, it's ineffective assistance of counsel, but it's also not as a matter of law invited error. Citing to the Al-Farraheem case, and it must be a waiver by the defendant, not by the attorney, but by the defendant. I'm talking about invited error. I had an invited error case many years ago where my client allegedly put his- While the witness was testifying. Yeah. While one of the cooperating witnesses was testifying, he did the slitting throat motion, and I was the trial counsel, and I argued on appeal that he couldn't have received a fair trial after that, and this court said, are you kidding me? That was invited error. This guy got up there and he did this, and you're arguing it. But that was a situation where he agreed to it. The invited error doctrine, as I understand the case, must be invited by the defendant himself, and there's nothing here to show. Isn't a proposed stipulated jury instruction inviting the court to give that instruction? I don't understand the distinction between the throat slit and providing a stipulated jury instruction that you now claim on appeal was erroneous. Sure. I understand, but I- You're saying that the invited error doctrine requires specific assent from the defendant personally, not from his lawyer? That's what I'm saying. That's what I believe the case is saying, number one, and secondly, I would ask the my view, I say the lawyer messed up here. In that case, this court found the lawyer messed up by agreeing to an instruction. May I reserve the remainder of the time for rebuttal? Yes, you may. Thank you. I can't please the court. Margaret Namar for the United States. Your honors are correct. Defendant is asking this court to reverse based on his own jury instruction. Not only did the defendant submit this jury instruction, but there was extensive discussion in the court below about the instruction and the relevant law, which is the same law that defendant relies on today in support of his position. Defendant never objected and agreed to the instruction he is now challenging. Should this court find that the instruction is reviewable, the standard of review is dispositive in this case? Counsel, the instruction probably is imprecise at best. I would agree with your honor on that. That or between those four clauses probably should say something like, and as a result or so as to or something, indicating that what follows is a consequence and thus there must be a finding on the first two, on the first two clauses and then find something from the other. You have to choose one from column A and then from column B, not just one of either A or B. I would concede, your honor, that this, as you stated, is not the most artfully drafted instruction. However, was this instruction adequate? Absolutely. I think it was. Defense counsel. Adequate for what? Did it show, did the jury have to find that the flight attendant was intimidated and was  And that's exactly what was focused on in this case. The problem, as I understand defense counsel's argument, is that the jury could have just found that the attendant refrained from doing something she otherwise would have done or would have done something that she would otherwise not do. And that could be satisfied by somebody pulling a call button by mistake. You deter a flight attendant from serving drinks on the other side of the plane and comes over to see what's going on in the call, but he said, I'm sorry, I was looking for the light button and I hit the call button by mistake. And that may be the case, but here that's not what happened in this case. Well, how do we know what the jury did? How do we know what the jury did? Right. How do we know that the jury didn't do that since the instruction evidently would permit what I've just described? That would satisfy the intimidation clause in the way that this instruction is written. In this case, the government's closing arguments as to the intimidation element focused on the fear of... I know what the focus is and I've read the transcript. There was more than enough evidence to convict Dr. Turner of this. Maybe it was overwhelming. So maybe my question is, if there's error in the instruction here, can we find it to be harmless error in light of overwhelming evidence? Is that permitted to us or not? I think the standard here is plain error. That affects substantial rights on the intimidation element because this instruction was not objected to. Okay. And if I think that it's plain error, do I then get to look and decide whether it's plain error? Can I make that judgment? Sure. I think it is harmless error. The facts of this case show that the flight attendant was intimidated for fear of bodily injury to the victims in this case. Can I ask... I'm looking at the instruction as actually given as to the elements and I will read into the record. Second, that the defendant intimidated a flight attendant of the aircraft. And third, that such intimidation interfered with the performance of the duties of the flight attendant of the aircraft or lessened the ability of the attendant to perform those duties. End quote. Doesn't that such intimidation language refer back to the second element, fairly read? I think that the... I would agree with Your Honor that it's the intimidation that's caused in that second element. And the court used the word that such intimidation, which would be synonymous with so as to or as a result of the intimidation, it interfered with the flight attendant's duties. Doesn't that solve the problem? I would agree with Your Honor's position. But isn't the problem that then the district court defined intimidation and gave them four different options? Gave the jury four options, all connected with ors? As I said, I would agree that the instruction isn't written artfully, but I think the focus in this case, all the evidence showed that it was that first part of the definition of intimidation, that the flight attendant was in reasonable apprehension of bodily harm. And so that was the focus in this case. No one argued it any other way. Defense counsel didn't suggest that there wasn't bodily harm or a fear of bodily harm. So that's what the focus was in this case. So regardless of the other ways that you could find intimidation, I think in this case it is clear on the record that the intimidation was a fear of bodily injury to the other passengers. But the evidence, I think that you were arguing, the evidence at trial supported all four clauses, didn't it? I mean, she testified that because I had to focus all my attention on Dr. Turner, I couldn't make my 15-minute rounds of the cabin, I couldn't respond to call lights, I mean, all that is in the record. So maybe this goes back to your harmless error argument. You are correct, Your Honor, that that is all in the record. And I do think it's harmless error. I think it was clear that the flight attendant was intimidated in this case, and that intimidation is what caused the interference with her duties. I think the district court, in its explanation on this issue in the defendant's order-denying bail pending appeal, discussed the effect and effect that intimidation and interference have. That intimidation is the effect with an A that it has on the flight attendant, and the interference is the effect that that causes with an E. So if, in fact, counsel seems as if counsel was ineffective, should we decide that issue here? I don't believe that, Your Honor, should. But I think that the record isn't sufficiently developed to make that determination. But isn't it, I mean, it seems as if you've almost suggested that counsel was ineffective. Counsel gave the bad, or proposed the bad instruction. Counsel went to the mat on the proposed bad instruction. Now we're trying to deal with how that proposed instruction is going to be read or not read by the jury. We're going to go for plain error, so we've got to say it's a significant enough error that it's going to cause the whole system to go down if it's plain error. And now, isn't that enough to make counsel ineffective? I don't think so on this record, Your Honor. I think we can't speculate as to what counsel's trial strategy may have been, whether he was purposely trying to embed errors in the record. I don't know. And so I think we need a sufficiently developed record in order to make that determination. Anything further, counsel? I have nothing further. If Your Honors don't have any further questions, I will sit down. Thank you, Ms. DeMar. Thank you. Mr. Cohen, you have some time. And I have a question I'd like to begin with. I'd like to take you to the instruction that Judge Tallman read. Because that instruction gives the correct elements. And so the jury was given, was correctly instructed on the statute. It's just later on in an additional detail where there's some slippage. But the jury was given a correct instruction, as far as I can tell. So I think that frankly what Judge Tallman read exacerbates the problem. It exacerbates the problem? I thought it fixes it. It highlights the problem, exacerbates it. It creates the problem. Because, as I think was discussed, it says that such intimidation interfered with the performance of the duty. So the third element refers back to the second element, which is what was intimidation. Intimidation is defined. It's not just a superfluous or cited instruction. It's the instruction defining what is intimidation, which has been found by Hicks, Grossman, and the two cases I recently cited, only one of which actually hadn't been cited before. But it clearly says that place in fear. In other words, that this instruction, intimidation, is what saves this statute from First Amendment problems, from vagueness problems. It is. So if the definition of intimidation, two of the possibilities on the menu, don't require apprehension or placing in fear, and are specifically incorporated by the third element, by the instruction the third element is highlighted. But the problem is the strength of the evidence, is it not? In other words, if the flight attendant really was in fear that this was going to erupt into a brawl in the cabin, then there was an apprehension of bodily harm. And if you read the instructions as a whole, which we have to do, then the jury was told that once you find that, if you find that there's a link between that fear and her relinquishment or abandonment of her other duties in the cabin, your client doesn't have much to complain about. Well, that's what the jury, I'm sorry, I'm only interrupting because I see my time taking down. That's exactly the problem. They were not told there was a link. If they were told there was a link under all these cases, it would be fine. But the link is in the instruction I read into the record. There's a link in that instruction, but the link, it's a tautology, right? Because the link says... No, it's a whole. You read the whole as the sum of all the parts of the jury instruction. Well, I think it comes down to this point because, in many ways, because it says there had to have been intimidation. The intimidation had to have caused her to affect her duties, right? But if the definition of intimidation is it affected her duties and that caused her to affect her duties, that's the tautology. That's what I'm talking about. That the Aguilar case makes clear that if there's a menu in the disjunctive, there's error. There is no authority in this circuit, not one case that's... Well, Aguilar has some different problems with regard to facts. It's a totally different... I mean, it was pretty skinny. I mean, it was a horrible case involving a federal judge who tipped off somebody to a Title III, but... So I understand. But as far as the actual law there, there's Aguilar which talks about the menu, which doesn't work if there's dilution, number one, okay? But there's absolutely no authority, none, for the proposition that we just heard from the government, right? That just because the parties or the argument focused on one of the prongs that, therefore, the jury didn't look at the other prongs. There's nothing to support that, nothing. I mean, as you pointed out, the jury acquitted on the two assault counts. Exactly. So the focus at trial was on bodily injury, assaults and battery. Of course, the focus on the assault counts was on the parts of the record that had to do with the assault. All I'm saying is this is a novel proposition that's unsupported by the law, that when there's a menu in the instruction set forth in the disjunctive, that somehow it can be cured by the focus of argument. That's all I'm saying. It's just not harmless error. This claim that there's overwhelming evidence in this case, the jury, here are the three areas. There's a whole bunch of pieces. There's a lot that happened outside the flight attendant's presence, which she admitted. There's a lot of testimony about the pilot, which was thrown out. And there's the information that happened in her presence, which included the spitting, that the jury acquitted on. So it's not that there's overwhelming evidence. There was a lot of disputed evidence. That's why we set it forth so carefully. But the evidence goes to the state of mind of the flight attendant, does it not? No, no. It's whether a reasonable flight attendant would have been placed in fear. And so if reports are being made to her of threatening to break people's necks, why doesn't, from an objective standpoint, why wouldn't a reasonable flight attendant have a fear that Dr. Turner would carry out his threat? Because there were a lot of reports that were made to the flight attendant, and the flight attendant herself said that when she saw several of the reports at the beginning, she wasn't concerned. It was the only time that she began— Well, but when she contacted him, it took her 15 minutes to get your client to sit back down after he got out of his seat. Why wouldn't that factor in to whether or not it was reasonable to think that he was going to harm the other passenger? It all factors into it. All of these cases, there's an unruly passenger. There's bad words being used. There's people jumping out of their—all these cases, and what— Well, the only person who jumped out of his chair was Dr. Turner. Well, no, actually, the person in front jumped up and turned around and used the bad words. She said, I might have sat on my knees. Oh, she said, I jumped up, I turned around after a few words, I pointed my finger at him, and I used the— I mean, I read the testimony, too, so— But all I'm saying is it's a heated argument. There's no case that says that when there's a heated argument that's not directed at the flight attendant at all that the statute is satisfied. So because there's contradictory testimony here, the real question is whether you look at a plain error IAC, would the jury— The question is should this jury or should there be a jury that could consider these facts under an appropriate standard? And given the two acquittals and all the conflicting testimony, I say yes. There was overwhelming evidence for this proposition that a Rule 29 could have been denied on this particular count. There may have been overwhelming evidence for that. But as far as once it gets to the jury, they're entitled, especially on the elements, to have a correct instruction. Now, we didn't even talk about the problem with knowingly at all during this argument, which is a whole other problem, and is also required in order to prevent improper convictions that— Counsel, you're well over your time, and I will tell you that knowingly doesn't appear in the statute. It doesn't appear in the statute at all. You're going to have a very, very difficult time, at least with me, convincing me that we ought to insert a word that's not in the statute. I understand. The general intent crime. I agree with all of that. I'm just asking all of your honors, and I'm way over time, I understand, to look at the cases that are cited here for the question. Because every case, the actual instruction given did say intentionally or knowingly below, and that's what was upheld, knowingly and then place in fear. But the question is whether it's required. And that's something that has not been— The Ninth Circuit has never addressed that issue. But we seem to be contradicted by our prior opinions. I don't think so, because in Nagani, actually knowingly or intentionally was given, and it's true in Lynch, it's true in Nagani, it's true in Meagher, it's true in Grossman. Counsel, I'm having a tough time with you bringing up knowingly in rebuttal. When the counsel has to sit there, and she had this time she could add, let's just go on. You've made your argument. I mean, it seems a little unfair if you want to bring it up now. Or you should have—you had extra time. You could have brought it up, so she could have responded. Come on. I'm not disagreeing with any of it. All right. I'm just representing my point. I kind of like the instruction that didn't get given. Thank you. Well, okay, Your Honor. Thank you, Your Honors. I appreciate all your patience. Thank you, Mr. Cohen. We thank both counsel for the argument. United States v. Turner is submitted.
judges: Tallman, Bybee, N.R. Smith